IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. 1:20-cr-731 |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **CHELSEA TARVER,** | |
| **Defendant.** | **MEMORANDUM OPINION AND ORDER** |

This matter is before the Court upon Defendant Chelsea Tarver's *pro se* ("Defendant" or "Tarver") Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release) filed on May 15, 2024 ("Defendant's Motion"). (Doc. No. 897.)  On July 3, 2024, the United States of America filed the Government's Response in Opposition to Defendant's Motion under seal ("the Government's Response").  (Doc. No. 907.)  On July 11, 2024, the Court appointed counsel to represent Tarver and her counsel filed a Reply to the Government's Response, under seal, on August 1, 2024 ("Defendant's Reply").  (Doc. No. 912.)  Accordingly, Defendant's Motion is ripe for a decision.

### BACKGROUND

On March 1, 2023, Tarver appeared before Magistrate Judge Greenberg and, pursuant to a written plea agreement, plead guilty to Conspiracy to Commit Health Care Fraud, in violation of 18 U.S.C. § 1349 and Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h).  (Doc. No. 525, Minutes of Proceedings on March 1, 2023.)  No objections were filed to the March 1, 2023 Report and Recommendation of Magistrate Judge Greenberg, and on March 20, 2023 the Court adopted the Report and Recommendation, accepted Defendant's Plea, and set the

Sentencing Hearing for September 18, 2023. (Doc. Nos. 525, 568, 569, and Non-Document Order of March 20, 2023.)

In reviewing the Presentence Investigation Report filed on June 23, 2023, the Court learned that Tarver had reported to the PSR writer during a home assessment that she was expecting her second child in January 2024. (PSR, Doc. No. 666, PageID # 4067, ¶ 44.) Tarver advised the PSR writer that the birth of her first child had been tough, her blood pressure was high during childbirth, she ultimately had to have an unplanned cesarean delivery, and she had to be hospitalized for a week during and after childbirth. (*Id.*)  Attached to Defendant's Sentencing Memorandum as Exhibit A was a Cleveland Clinic After Visit Summary dated July 5, 2023, demonstrating that as of that date, Tarver was 11 weeks pregnant. (Doc. No. 729-1, PageID # 4385.) Thus, Tarver became pregnant after she plead guilty on March 1, 2023.

At sentencing, and after evaluating the Section 3553(a) factors, including the Defendant's pregnancy and the unplanned cesarean delivery of her first child as part of the history and characteristics of Defendant, the Court varied downward from the Advisory Guidelines Range of 15 to 21 months imprisonment and sentenced Tarver to 12 months and one day of imprisonment. (Doc. No. 748.) At the conclusion of the Sentencing Hearing, the Court advised Tarver and her counsel that she had a choice. She could report to prison as directed by the US Marshal, or the Court would allow her a delayed report date so she could remain out of prison while pregnant, give birth and bond with her newborn, and then report to serve her prison term. Based upon Defendant's Motion and Defendant's Reply, Tarver opted to delay reporting to prison and reported six weeks after she gave birth.

On February 15, 2024, the Court granted Tarver's Motion to Reduce Sentence and her prison sentence was reduced to 10 months. (Doc. No. 875, PageID # 6939.)

In Defendant's Motion, Tarver represents that she submitted a request for compassionate release to the warden on March 24, 2024, but had not received a response as of the date of the filing of Defendant's Motion. (Doc. No. 897, PageID # 7059.) Tarver submits that "[t]here are other extraordinary and compelling reasons for [her] release," specifically "due to the extreme hardship in providing for her two minor children (ages 2 and 4 months) as well as lack of proper medical care while incarcerated at FPC Alderson." (Doc. No. 897, PageID #s 7060, 7063.) In Defendant's Motion, Tarver asserts that her projected release date is December 17, 2024. (Doc. No. 897, PageID # 7058.) However, in Defendant's Reply, it is asserted that her projected release date is October 31, 2024. (Doc. No. 912, PageID # 7269.)

In Defendant's Motion, Tarver represents that the conditions in prison have made her post-partum healing difficult; she suffers from post-partum depression and anxiety which has been made more severe by the separation from her newborn, and additionally her two year old; and that "women like [her] are also at increased risk of developing severe symptoms for COVID-19 infection, which is still very prevalent, especially in the close quarters, confined, over-populated institutions such [as] BOP/FPC Alderson which does not adhere to social distancing, mask, or sanitizing precautions." (Doc. No. 897, PageIDs 7064-65.) Tarver also asserts that her presence is desperately needed at home because her husband is employed full-time and scheduled to return to work from parental leave on June 3, 2024. Therefore, she would like to be released to home confinement to be able to care for her children.

The Government opposes Defendant's Motion, asserting that Tarver was offered, but refused the COVID-19 vaccine on February 19, 2024;[1] and Tarver's medical circumstances[2] and

---

[1] Attached to the Government's Response, as Exhibit A, is a copy of Tarver's BOP Medical Records and at page 55 of 71, it is noted that Tarver was offered, but refused, the COVID-19 Moderna vaccine. (Doc. No. 907-1.)
[2] The Government points to Tarver's BOP Medical Records to demonstrate, and they do demonstrate, that as of March 23, 2024 there were no signs/symptoms of infection or scar opening, and since March 24, 2024, there were no follow-

her desire to be released to take care of her two young children do not qualify as "extraordinary and compelling circumstances" as set forth in U.S.S.G. § 1B1.13.  The Government correctly asserts that Defendant's pregnancy was known to the Court at the time of her sentencing.

In Defendant's Reply, Defendant acknowledges that the surgical incision difficulties from giving birth that she experienced have healed but maintains that she suffers from emotional trauma from not being able to bond with her infant child and from her inability to care for her children while her husband works full-time.  While conceding that at the time of the sentencing decision it was known that she was pregnant, Defendant submits that it was not known that she would have a complicated birth and undergo a cesarean section procedure.  Defendant urges this Court to grant compassionate release because of the financial burden associated with her husband having to place their two children in day care and work second jobs like Door Dash six to seven days per week, oftentimes with the children accompanying him while he makes deliveries for his freelance jobs.[3]  Defendant also represents that her husband is stressed, which is further complicated by his diagnoses of neurological impediments that cause persistent dizzy spells, pointing to medical records included with Exhibit B attached to Defendant's Motion.[4]

Defendant contends that the circumstances presented qualify for relief under:  the "OTHER REASONS" set forth in U.S.S.G. § 1B1.13(b)(5)[5]; and U.S.S.G.§ 1B1.13(b)(3)(B)[6], arguing that

---

up appointments regarding her cesarean section complications or other health issues, and she was offered treatment for her depression.  (Doc. No. 907-1, including pages 2-4 of 71.)

[3] In support of the contention of financial difficulties and stress endured by Tarver's husband, Defendant attaches what she delineates an "affidavit".  However, it is not an affidavit, but just a letter written by Tarver's husband.

[4] Exhibit B attached to Defendant's Motion includes Southwest General Health Center Emergency Department Discharge Instructions for Marcus Tarver for an admission date of 8/4/2017 because of headaches and syncope and medical records from the Cleveland Clinic as recently as 11/7/2023 associated with complaints of dizziness and cervical spine therapy to treat the dizziness.  (Doc. No. 897-2, PageID #s 7086 - 7099.)

[5] U.S.S.G. § 1B1.13(b)(5) reads as follows:  OTHER REASONS.—The defendant presents any other circumstances or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

[6] U.S.S.G. § 1B1.13(b)(3)(A) reads in relevant part as follows:  FAMILY CIRCUMSTANCES OF THE DEFENDANT – (A) The *** incapacitation of the caregiver of the defendant's minor child…"

the term "incapacitation" as used therein does not have to be physical, but "can be defined as the state of not having the necessary ability, qualification, or strength to perform some specified action or function." (Doc. No. 907, PageID # 7178.)

### ANALYSIS

> By statute, three substantive requirements must be met before a district court may grant compassionate release. 18 U.S.C. § 3582(c)(1)(A). First, the court must determine that "extraordinary and compelling reasons warrant" a sentence reduction. *Ruffin*, 978 F.3d at 1004 (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Second, the court must find that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission, *see* U.S.S.G. § 1B1.13. *Ruffin*, 978 F.3d at 1005. Third, the court must consider the applicable § 3553(a) factors. *Id.*; *see* 18 U.S.C. § 3582(c)(1)(A). . . . [W]hen a prisoner [brings a motion on his own accord], the First Step Act renders U.S.S.G. § 1B1.13 inapplicable, meaning district courts enjoy "full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1111. That leaves a district court to focus on steps one and three, as it may now "skip step two of the § 3582(c)(1)(A) inquiry." *Id.*

*United States v. Hampton*, 985 F.3d 530, 532 (6th Cir. 2021).

However, according to the Sixth Circuit, "a district court may deny compassionate release if it finds that the defendant fails to meet any one of the three steps,[7] and may do so without addressing any of the other criteria." *United States v. Taylor*, No. 20-4241, 2021 WL 2182320, at *2 (6th Cir. May 28, 2021) (citing *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021)). As recognized by the Government, the Sixth Circuit has concluded that as presently written, U.S.S.G. § 1B1.13 is not a policy statement applicable to inmate-filed motions for compassionate release, and does not bind district courts in this context, citing *United States v. Elias*, No. 20-3654, 2021 WL 51069 at *4 (6th Cir. Jan. 6, 2021), and *United States v. Jones*, 980 F.3d 1108, 1108-11 (6th Cir. 2020). However, the Sixth Circuit has also concluded that courts "may look to § 1B1.13 as

---

[7] Those three criteria are: extraordinary and compelling reasons justifying release; the applicable § 3553(a) factors; and any applicable policy statement, such as U.S.S.G. § 1B1.13. *United States v. Taylor*, No. 20-4241, 2021 WL 2182320, at *2 (6th Cir. May 28, 2021) (citing *United States v. Tomes*, 990 F.3d 500, 502 (6th Cir. 2021) (citing 18 U.S.C. § 35(

relevant, even if no longer binding," in considering how to define the term, citing *United States v. Tomes*, 990 F.3d 500, 503 (6th Cir. 2021) (citing with approval *United States v. Byrd*, 842 F.App'x 915, 918 (5th Cir. 2021).

First, the Court finds that Tarver has exhausted her administrative remedies. Second, the Court finds that because she was offered and refused the COVID-19 vaccine, Tarver's claim that she is put at an increased risk of contracting COVID-19 at FPC Alderson does not qualify as an "extraordinary and compelling" circumstance warranting early release. *See United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021).

Third, as acknowledged in Defendant's Reply and supported by the BOP medical records, Defendant's incision from the cesarean section has healed and she has not reported any issues with it or had any additional treatment associated with it since March 23, 2024. While Defendant may be depressed because she is in prison and away from her children, including her newborn, that would be normal for most mothers and is not an "extraordinary and compelling" circumstance. Moreover, Tarver has been offered counseling to deal with her depression and anxiety, but the records reflect that she has not accepted that offer of help.

Moreover, at the time of the sentencing, the Court knew and considered, not only that Tarver was pregnant, but also that her first pregnancy and childbirth had been tough and involved a cesarean section. This weighs against the argument that the difficult childbirth that took place before she reported to prison constitutes an "extraordinary and compelling" circumstance. *See United States v. Hunter*, 12 F.4th 555, 569 (6th Cir. 2021). Again, Tarver has physically recovered from the cesarean childbirth and the problems with the incision associated with it. Also, Defendant got pregnant after she plead guilty and while knowing her sentencing hearing was set for September 18, 2023, and she was able to be with her newborn for six weeks after giving birth,

making this case distinguishable from *United States v. Rodriguez*, (Case No. 13-cr-00084, Dist. Nevada Nov. 19, 2020), attached as Exhibit L to Defendant's Reply. Thus, this Court is not persuaded by the decision in *Rodriguez*, much less bound by it.

As for the financial stress and difficulties experienced by Defendant's husband in taking care of the two children while working a full-time job and side jobs to help pay for childcare, these also do not constitute "extraordinary and compelling" circumstances. While Defendant asserts that there are no family members close by that can help with childcare responsibilities, Defendant does not demonstrate that any other family members or friends have declined requests for financial assistance to help pay for childcare and thereby alleviate the burden of Defendant's husband performing freelance work to earn extra money. Indeed, there is no allegation much less proof that Defendant's husband has sought, but been denied, credit or a loan to help him cover the costs of childcare.

The Government correctly cites other district courts' decisions for its argument that "familial hardship is rarely a valid reason for the release of a defendant."[8] This Court finds that the hardship that Defendant's husband contends he is facing is not an "extraordinary and compelling" circumstance warranting relief. And, *United States v. Morrison*, (Case No. 19-cr-4693, SD. Cal., Feb. 2, 2023), attached as Exhibit M to Defendant's Reply, does not dictate otherwise. In *Morrison*, the defendant's two teenage children had health problems requiring ongoing doctors' appointments and the caregiver of the defendant's children, her mother, had her own health issues, specifically spinal stenosis and degenerative disc disease, that prevented her from taking the children to all of their needed medical appointments and caring for them. Here, Defendant has not demonstrated to this Court that her husband is actually "incapacitated" as that

---

[8] Doc. No. 907, PageID # 7180-7181.

term is used in U.S.S.G. § 1B1.13(b)(3)(A), whether by any physical, mental and/or financial problems, or lacks the ability, qualifications or strength to fulfill his function as the father and caregiver of Defendant's children.

Since the Court finds that the circumstances set forth in Defendant's Motion and Defendant's Reply do not constitute "extraordinary and compelling" circumstances warranting the granting of Defendant's Motion, it need not and will not evaluate the 3553(a) factors.

Defendant's Motion is denied.

**IT IS SO ORDERED.**

Date:  August 6, 2024

 s/Pamela A. Barker
PAMELA A. BARKER
U. S. DISTRICT JUDGE